# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

|  |  |
|---|---|
| SHANNON CRYSTAL CROWE, as HEIR AT LAW of STEVEN WAYNE DEESE and as ADMINISTRATOR OF THE ESTATE OF STEVEN WAYNE DEESE, | : Civil Action No.: 3:25-cv-00095-LMM :<br>:<br>:<br>:<br>:<br>: |
| Plaintiff, | :<br>: |
| v. | :<br>:<br>: |
| THORATEC, LLC and ABBOTT LABORATORIES, INC., | :<br>:<br>: |
| Defendants. | :<br>: |

## DEFENDANTS THORATEC, LLC'S, AND ABBOTT LABORATORIES INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................. 3

    A.  Class III PMA Medical Devices Like the HeartMate 3 Are Subject to the FDA's Rigorous Scrutiny, Approval, and Oversight. ....................................................................................... 3

    B.  The FDA Grants Premarket Approval for the HeartMate 3 in 2017 .................................................................................... 6

    C.  Plaintiff Crowe Alleges A Battery Component Of Her Father's HeartMate 3 Caused A Fire, Resulting In His Death ...................................................................................... 7

III.    LEGAL ARGUMENT ............................................................................. 8

    A.  Federal Law Preempts Counts I And II For Strict Liability And Negligent Manufacturing Defect............................................ 8

        1.  Federal Preemption Forecloses Plaintiff's Claims .............. 8

        2.  The Strict Liability And Negligent Manufacturing Defect Claims Are Preempted ........................................... 13

    B.  Plaintiff Does Not And Cannot Allege Facts Supporting Attorney Fees Under OCGA Section 13-6-11 (Count III)............ 19

IV.     CONCLUSION...................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Gen. Motors Corp.*,
  267 Ga. 339 (1996) ........................................................................ 21

*Barnes ex rel. Gibson*,
  2021 U.S. Dist. LEXIS 159341 (N.D. Ga. Aug. 24, 2021) ........................... 17

*Barnes v. Howmedica Osteonics Corp.*,
  2010 U.S. Dist. LEXIS 160134 (N.D. Ala. Dec. 14, 2010)............... 16, 25, 1-3

*Benchmark Builders, Inc. v. Schultz*,
  289 Ga. 329 (2011) ........................................................................ 21

*Blevins-Ellington v. Coopersurgical, Inc.*,
  2023 U.S. Dist. LEXIS 28936 (N.D. Ga. Jan. 17, 2023)............................ 18

*Brooks v. Mentor Worldwide, LLC*,
  985 F.3d 1272 (10th Cir. 2021).......................................................... 12

*Brown v. Kent*,
  274 Ga. 849 (2002) ........................................................................ 19

*Bryant v. Thoratec Corp.*,
  343 F. Supp. 3d 594 (S.D. Miss. 2018) ................................................ 12

*Buckman Co. v. Plaintiff's Legal Committee*,
  531 U.S. 341 (2001).................................................... 2, 10, 24, 25

*Burgos v. Satiety, Inc.*,
  2010 U.S. Dist. LEXIS 125924 (E.D.N.Y. Nov. 30, 2010).......................... 11

*Burkett v. Smith & Nephew GmbH*,
  2014 U.S. Dist LEXIS 43995 (E.D.N.Y. Mar. 31, 2014) ............................ 14

*Caplinger v. Medtronic, Inc.*,
  784 F.3d 1335 (10th Cir. 2015)...........................................................9

*Clean2GoServs., LLC v. IRT Living, LLC*,
  2025 U.S. Dist. LEXIS 58772 (N.D. Ga. Mar. 28, 2025)............................ 20

*Comty. Nutrition Inst. v. Young*,
    818 F.2d 943 (D.C. Cir. 1987) ...................................................................... 16

*Ford Motor Co. v. Carter*,
    239 Ga. 657 (1977) ..................................................................................... 21

*Frey v. Bayer Corp.*,
    499 F. Supp. 3d 1283 (M.D. Ga. 2023) ...................................................... 12

*Garcia v. Bayer Essure, Inc.*,
    2023 U.S. Dist. LEXIS 112416 (N.M.D.C. Jun. 28, 2023) .......................... 14

*Gile v. Optical Radiation Corp.*,
    22 F.3d 540 (3d Cir. 1994) ............................................................. 16, 25, 1-3

*Guggenheim Dev. Servs. LLC v. JMC Flatrock Partners LLC*,
    2025 U.S. Dist. LEXIS 72091 (M.D. Ga. Apr. 16, 2025) ............................ 20

*Haynes v. Cyberonics, Inc.*,
    2011 U.S. Dist. LEXIS 99738 (N.D. Ga. Sep. 6, 2011) ............................... 10

*Horn v. Boston Sci. Neuromodulation Corp.*,
    2011 U.S. Dist. LEXIS 102164 (S.D. Ga. Aug. 26, 2011) ........................... 14

*Horn v. Thoratec Corp.*,
    376 F.3d 163 (3d Cir. 2004) ........................................................................ 12

*Ilarazza v. Medtronic, Inc.*,
    677 F. Supp. 2d 582 (E.D.N.Y. 2009) ......................................................... 14

*Jackson v. Medtronic, Inc.*,
    2023 U.S. Dist. LEXIS 235964 (Jan. 23, 2023 N.D. Ga.) ........................... 17

*Kinard v. Gallina*,
    2017 U.S. Dist. LEXIS 75848 (S.D. Ga. May 18, 2017) ............................. 20

*Kubicki v. Medtronic, Inc.*,
    293 F. Supp. 3d 129 (D.D.C. 2018) ................................................ 13, 24, 1-1

*Leonard v. Medtronic, Inc.*,
    2011 U.S. Dist. LEXIS 93176 (N.D. Ga. Aug. 19, 2011) ...................... 10, 17

*Lorgus v. Tureau*,
    2024 U.S. Dist. LEXIS 159108 (M.D. Ga. Sept. 4, 2024) ........................... 20

*M&H Construction Co. v. North Fulton, Development Corp.*,
    238 Ga. App. 713 (1999) ................................................................. 19

*Martin v. Medtronic, Inc.*,
    2017 U.S. Dist. LEXIS 26350 (E.D. Cal. Feb. 24, 2017) ........................... 16

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
    592 F. Supp. 2d 1147 (D. Minn. 2009) .................................................. 10, 15

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
    623 F.3d 1200 (8th Cir. 2010) ............................................................. 10, 11

*Mink v. Smith & Nephew*,
    860 F.3d 1319 (11th Cir. 2017) ...................................................... 10, 11, 13

*Mora v. Miller*,
    2019 U.S. Dist. LEXIS 245230 (N.D. Ga. Apr. 10, 2019) ......................... 20

*Otis-Wisher v. Medtronic, Inc.*,
    616 F. App'x 433 (2d Cir. 2015) ........................................................... 11

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) .............................................................. 16

*Poloney v. Tambrands*,
    260 Ga. 850 (1992) ............................................................................. 2

*Powell Co. v. McGarey Grp., LLC*,
    508 F. Supp. 2d 1202 (N.D. Ga. 2007) ............................................ 19, 20, 21

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008) ................................................................... *passim*

*Riegel v. Medtronic, Inc.*,
    451 F.3d 104 (2d Cir. 2006) ................................................................. 4

*Sadler v. Advanced Bionics, Inc.*,
    929 F. Supp. 2d 670 (W.D. Ky. 2013) .................................................... 17

*Shuker v. Smith & Nephew, PLC*,
    885 F.3d 760 (3d Cir. 2018) ................................................................. 9

*Thomas v. Alcon Labs*,
    116 F. Sup. 3d (N.D.Ga. 2013) .................................................. 13, 14, 24, 1-1

*Watters v. Coopersurgical, Inc.,*
  655 F. Supp. 3d 376 (E.D.N.C. 2023) ........................................................ 18

*Webb v. Mentor Worldwide LLC,*
  2020 U.S. Dist. LEXIS 60860 (N.D.N.Y. Apr. 7, 2020) .............................. 13

*Webb v. Mentor Worldwide LLC,*
  453 F. Supp. 3d 550 (N.D.N.Y. 2020) ........................................................ 14

*Williams v. St. Jude Med.,*
  2017 U.S. Dist. LEXIS 227477 (N.D. Ga. Oct. 19, 2017) ........................... 12

*Winkler v. Medtronic, Inc.,*
  2019 U.S. Dist. LEXIS 198391 (D. Md. Nov. 15, 2019) .............................. 12

*Wolicki-Gables v. Arrow Int'l, Inc.,*
  634 F.3d 1296 (11th Cir. 2011) ............................................................... 9, 11

**Statutes**

21 U.S.C. § 337(a) ......................................................................................*passim*

21 U.S.C. § 360(k)(a) ................................................................................24, 1-1

21 U.S.C. § 360c(a)(1)(C) .................................................................................4

21 U.S.C. §360c(a)(2)(C) .................................................................................5

21 U.S.C. §360e(d) ..........................................................................................4

21 U.S.C. § 360h ..............................................................................................5

21 U.S.C. § 360k(a) ................................................................................. 1, 8, 9

21 USC § 331 ................................................................................................ 25

21 USC § 351 ................................................................................................ 25

OCGA § 13-6-11 ........................................................................................... 19

**Other Authorities**

21 C.F.R. § 814.20(b) .................................................................................. 4, 5

21 C.F.R. § 814.39 ...........................................................................................5

21 CFR Part 820 ........................................................................................... 24

21 CFR § 803.50 ........................................................................................... 25

21 CFR § 820.30 ........................................................................................... 24

21 CFR § 820.50 ........................................................................................... 24

21 CFR § 820.70 ........................................................................................... 24

21 CFR § 820.72 ........................................................................................... 24

21 CFR § 820.75 ........................................................................................... 24

21 CFR § 820.90 ........................................................................................... 24

21 CFR § 820.100 ......................................................................................... 24

21 CFR § 820.130 ......................................................................................... 24

21 CFR § 820.140 ......................................................................................... 24

21 CFR § 820.150 ......................................................................................... 24

21 CFR § 820.170 ......................................................................................... 24

21 CFR § 820.198 ......................................................................................... 24

## I.    INTRODUCTION

The product liability claims in this wrongful death action involve Abbott's[1] HeartMate 3—a surgically implanted medical device used to treat advanced, end-stage heart failure in patients ineligible for, or on the waiting list for, a heart transplant.  The FDA has designated the HeartMate 3 as a Class III medical device, which means its design, manufacturing, and labeling were approved through the FDA's most-rigorous regulatory process, "premarket approval" (or "PMA").

Plaintiff alleges that her father, Steven Deese, was sleeping when one of the HeartMate 3's external batteries ignited while in its charging dock, and caused his death from smoke inhalation.  Plaintiff alleges a manufacturing defect claim (under strict liability and negligence theories), as well as a claim for litigation expenses under OCGA § 13-6-11.  Abbott moves to dismiss the Complaint for the following reasons:

***First***, federal law preempts Plaintiff's claims.  To protect the FDA's authority and encourage the development of important medical devices, Congress preempted all state law tort claims purporting to impose requirements for a medical device that differ from or add to what the FDA approved [21 U.S.C. § 360k(a) (express preemption clause); *Riegel v. Medtronic,*

---

[1] For convenience, this brief refers to defendants Thoratec, LLC and Abbott Laboratories, Inc. collectively as "Abbott".

*Inc.*, 552 U.S. 312, 326-29 (2008); *Poloney v. Tambrands*, 260 Ga. 850, 51 (1992)], or that usurp the FDA's exclusive enforcement power [21 U.S.C. § 337(a) (FDCA's "no private right of action" clause); *Buckman Co. v. Plaintiff's Legal Committee*, 531 U.S. 341 (2001)]. In enacting the express and implied preemption provisions, Congress recognized the need to protect the FDA's approval and decision-making in this regard, even though it would leave some with alleged injuries without judicial recourse. Otherwise, medical device manufacturers would potentially face tort liability under 50 different states' tort regimes—which in turn would stifle the development of important, life-saving devices.

The FDA's approval—which carries the force of federal law—was premised on its own independent conclusion that: (1) the benefits of the device outweighed any risks; and (2) it had reasonable assurance of the device's safety and efficacy. Yet, Plaintiff's product liability claims against Abbott attack the FDA's conclusions. Plaintiff alleges that the HeartMate 3 should have been manufactured differently, which in turn would impose requirements on the HeartMate 3 that differ from or add to what the FDA required in its approval of the device. The Complaint also is effectively an attempt to usurp the FDA's authority to enforce federal medical device laws and PMA requirements contrary to preemption instructions from Congress and the Supreme Court.

Plaintiff will argue that her state law tort claims are consistent with, not different from or in addition to, federal law and thus will contend they escape preemption.  But courts around the country—including this one—hold that the general regulations on which Plaintiff relies (Current Good Manufacturing Practices or "CGMPs") do not provide a legal basis to avoid preemption because the CGMPs are broad guidelines that lack the specificity needed to constitute a device-specific federal "requirement" that gives rise to a violation of federal law.  But more importantly, in granting premarket approval the FDA ensures device-specific compliance with these regulations at the outset.  They do not provide a pathway for Plaintiff to navigate beyond the barricades of express and implied preemption.

***Second***, Plaintiff's claim for litigation expenses under OCGA § 13-6-11 fails because the Complaint does not allege any facts showing that Abbott engaged in bad faith or has been stubbornly litigious.  This motion to dismiss alone proves that there is a bona fide dispute over Abbott's liability.  Under similar circumstances, Georgia federal courts routinely dismiss such claims.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Class III PMA Medical Devices Like the HeartMate 3 Are Subject to the FDA's Rigorous Scrutiny, Approval, and Oversight.

In 1976, Congress enacted the Medical Device Amendments ("MDA") to the existing Food, Drug, and Cosmetic Act ("FDCA"), which gave FDA

authority to ensure all medical devices were safe and effective before entering the marketplace, and established three categories (or "classes") of medical devices: Class I, II, or III, "depending on the risks they present." *Riegel*, 552 U.S. at 316. Because Class III devices are "of substantial importance in preventing impairment to human health," but also pose "unreasonable risk of illness or injury," they receive the most scrutiny and under the strictest controls. 21 U.S.C. § 360c(a)(1)(C). Before marketing a Class III medical device, a manufacturer must submit a PMA application, which the FDA grants "only after it determines that a device offers a reasonable assurance of safety and effectiveness." *Riegel*, 552 U.S. at 323 (citing 21 U.S.C. §360e(d)).

PMA applications are exhaustive. They must include "full reports of all investigations of the safety and effectiveness of the device; a full statement of the components, ingredients, properties, and principles of operation of the device; a full description of the methods used in the manufacture and processing of the device; information about performance standards of the device; samples of the device; specimens of the proposed labeling for the device; and any other relevant information." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 109 (2d Cir. 2006), *aff'd*, 552 U.S. 312 (2008); *see also* 21 C.F.R. § 814.20(b) (promulg. 7/22/1986) (specifying PMA application requirements); Abbott's Request for Judicial Notice ("RJN"), Exs. 1-2.

In PMA applications, manufacturers must include descriptions of their

compliance with (CGMP) requirements, which are promulgated in the Quality System regulation (QSR), and "approval of a PMA application for a device can be denied if a manufacturer does not conform." RJN Ex. 2, at Part I, p. 1-2; Ex. 1. In other words, a manufacturer must demonstrate compliance with CGMP and QSR requirements in the PMA application itself. *See also* RJN Ex. 2, Part II, p. 1. FDA may also perform a preapproval PMA inspection "to assess a manufacturer's ability to design and manufacture" the device in compliance with those regulations. *Id.* FDA also may refer a PMA application "to a panel of outside experts [citation], and may request additional data from the manufacturer." *Riegel*, 552 U.S. at 318.

"FDA spends an average of 1,200 hours reviewing each application" and "must 'weig[h] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.'" *Id.* (quoting 21 U.S.C. §360c(a)(2)(C)). *Riegel* acknowledged that FDA may grant PMA to "devices that present great risks if they nonetheless offer great benefits in light of available alternatives." *Id.*

Manufacturers who wish to change any safety-related aspect of an approved Class III device (such as its design, warnings, or manufacturing process) must submit a supplemental application to the FDA in most instances, unless the FDA instructs otherwise. *See* 21 C.F.R. § 814.39 (promulg. 7/22/1986). After PMA, the FDA retains plenary authority to take measures it

believes necessary to regulate devices on the market. *See* 21 U.S.C. § 360h. The FDA also may conduct postmarket inspections to monitor and ensure compliance with CGMPs, adverse event reporting, or other medical device requirements. *See* RJN, Ex.2, Part II, p. 1.

The bottom line is this: PMA devices do not reach the market unless the FDA (1) conducts an exhaustive and lengthy assessment; (2) imposes device-specific safety and effectiveness requirements; and (3) determines that the device's overall risk/benefit profile might improve the health or save the life of a patient.

## B. The FDA Grants Premarket Approval for the HeartMate 3 in 2017

Thoratec manufactures the HeartMate 3, which is an implanted medical device used to treat patients with advanced heart failure. (*See* Compl. ¶¶ 3-9, 44-45.) The HeartMate 3 has an internal heart pump (a Left Ventricle Assist Device or "LVAD") that requires electrical power to operate. (*Id.* ¶¶ 3-4.) That power comes from either an external Mobile Power Unit accessory (which in turn is plugged into an electrical outlet) or from a pair of external rechargeable 14-volt lithium-ion batteries. (*Id.* ¶ 4.) The HeartMate's 14-volt batteries are recharged using an external battery charger component. (*Id.* ¶¶ 5-7.)

In August 2017, the FDA granted Abbott's PMA application for the entire HeartMate 3 Left Ventricular Device System (or "LVAS"). (*Id.* ¶¶ 38, 44; *see*

*also* RJN, Ex. 3.)  The FDA initially approved it for short term hemodynamic support for patients with advanced, or end stage, left ventricular heart failure, to provide a bridge therapy pending heart transplant, and later (in October 2018) approved it as a "destination therapy" for those ineligible for, or unable to obtain, a heart transplant.  (*Id.* ¶ 45; *see also* RJN, Exs. 4-5.)

### C. Plaintiff Crowe Alleges A Battery Component Of Her Father's HeartMate 3 Caused A Fire, Resulting In His Death

In January 2021, Mr. Deese was implanted with a HeartMate 3 to treat his heart failure.  (Compl. ¶ 24.)  Plaintiff alleges that in May 2023, Mr. Deese was asleep when a fire erupted, spread smoke throughout the room and, sadly, Mr. Deese died from "inhalation of products of combustion."  (*Id.* ¶¶ 26, 34, 37.) Plaintiff alleges that when this occurred, Mr. Deese had four external batteries recharging on his HeartMate battery charger.  (*Id.* ¶ 12.)  She further alleges that one of the batteries "internally shorted, overheated, and caused a thermal runaway" which allegedly caused a fire and the smoke Mr. Deese inhaled.  (*Id.*)

The Complaint advances three Counts: (1) Strict Liability – Manufacturing Defect; (2) Negligence – Manufacturing Defect; and (3) Costs of Litigation and Attorney Fees under OCGA § 13-6-11.  (*Id.* ¶¶ 57-72.)

## III.  LEGAL ARGUMENT

### A.  Federal Law Preempts Counts I And II For Strict Liability And Negligent Manufacturing Defect

#### 1.  Federal Preemption Forecloses Plaintiff's Claims

**Express Preemption.** Federal law (namely, the express preemption provision in the MDA) provides that no State may establish "any requirement . . . which is different from, or in addition to" a federal requirement "which relates to the safety or effectiveness of the device." 21 U.S.C. § 360k(a). In enacting 21 U.S.C. § 360k(a), Congress "swept back some state obligations and imposed a regime of detailed federal oversight," enforced by an expert federal agency rather than private plaintiffs and lay juries. *Riegel*, 552 U.S. at 316. The Supreme Court has affirmed that the MDA broadly preempts state law claims challenging the safety or performance of a premarket-approved device. *See id.* at 312. Although § 360k(a)'s broad preemption of state tort claims may leave some allegedly-injured individuals without judicial recourse, that was, in Congress' estimation, outweighed by the benefit to the far greater number "who would suffer without new medical devices if juries were allowed to apply the tort law of 50 States on all innovations." *Id.* at 326.

In *Riegel*, the Supreme Court affirmed that federal law expressly preempts state law claims challenging the safety or performance of Class III PMA-approved devices. *See* 552 U.S. at 312. The Supreme Court explained that Congress "swept back some state obligations and imposed a regime of

detailed federal oversight," enforced by an expert federal agency rather than private plaintiffs and lay juries because "solicitude for those injured by FDA-approved devices . . . was overcome in Congress's estimation by solicitude for those who would suffer without new medical devices if juries were allowed to apply the tort law of 50 states to all innovations." *Id.* at 326. Absent this express prohibition, "additional state duties on top of those imposed by federal law … might check innovation, postpone access to life-saving devices, and impose barriers to entry without sufficient offsetting safety gains." *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1346 (10th Cir. 2015) (Gorsuch, J.).

*Riegel* sets forth a two-step express preemption analysis. First, a court determines whether "the Federal Government has established requirements applicable to" the medical device. *Riegel*, 552 U.S. at 321-22 (citations and quotation marks omitted). Class III devices satisfy *Riegel*'s first step as a matter of law. *Id.* at 322. That is because "premarket approval … imposes requirements under the MDA which are specific to individual devices." *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1301 (11th Cir. 2011) (quotations and citation omitted); *see also Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 767 (3d Cir. 2018) ("[T]he manufacturer of that Class III device receives express preemption protection[].").

As for *Riegel*'s second step, federal law expressly preempts state law causes of action that impose safety or effectiveness requirements that are

"different from, or in addition to' the requirements FDA imposed through the PMA process. *Riegel*, 552 U.S. at 322 (quoting §360k(a)). Product liability claims targeting the safety and effectiveness of a PMA medical device necessarily are preempted. *Id*. Since *Riegel*, "courts across the country have applied Section 360k(a) broadly, preempting all manner of claims from strict products liability and negligence, to breach of warranty, to failure to warn and manufacturing-and-design-defect, to negligence *per se*." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d 1147, 1152 (D. Minn. 2009) (citations omitted), *aff'd*, 623 F.3d 1200 (8th Cir. 2010); *see also Haynes v. Cyberonics, Inc.*, 2011 U.S. Dist. LEXIS 99738 at *16-17 (N.D. Ga. Sep. 6, 2011) (strict liability manufacturing defect claim preempted); *Leonard v. Medtronic, Inc.*, 2011 U.S. Dist. LEXIS 93176, at *17-35 (N.D. Ga. Aug. 19, 2011) (negligent & strict liability manufacturing defect, and other claims, all preempted).

**Implied Medical Device Preemption.** By the FDCA's own terms, enforcement of medical device requirements is expressly reserved to the United States. 21 U.S.C. § 337(a). Congress "le[ft] no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the" FDCA. *Buckman*, 531 U.S. at 349 n.4. A private plaintiff's attempt to sue for a violation of applicable federal regulations conflicts with the statutory command that the FDCA is to be "enforced"

exclusively by the federal government.  *Buckman*, 531 U.S. at 352-53.

**Express and implied preemption principles as applied.**  As this analysis portends, for state law product liability and tort claims to survive, they must fit in the narrow gap between express preemption on the one hand, and implied preemption on the other.  *Mink v. Smith & Nephew*, 860 F.3d 1319, 1327 (11th Cir. 2017); *In re Medtronic, Inc.*, 623 F.3d at 1204.  "To make it through, a plaintiff has to sue for conduct that violates a federal requirement (avoiding express preemption), but cannot sue only because the conduct violated that requirement (avoiding implied preemption)."  *Mink*, 860 F.3d at 1327.

To be parallel, the state and federal requirements must be "genuinely equivalent" [*Wolicki-Gables*, 634 F.3d at 1300] if not "identical" [*Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 434 (2d Cir. 2015)].  To navigate through the narrow gap, a plaintiff "cannot simply incant the magic words '[defendant] violated FDA regulations' in order to avoid preemption." *Wolicki-Gables*, 634 F.3d at 1301 (citation omitted).  An "opaque reference" to "statutes, codes, laws, ordinances, rules [or] regulations" is insufficient to state a valid parallel claim. *Burgos v. Satiety, Inc.*, 2010 U.S. Dist. LEXIS 125924, at *10-11 (E.D.N.Y. Nov. 30, 2010).  Rather, the plaintiff must plausibly allege "a particular federal specification referring to the device at issue" or "identify specific PMA

requirements" that have been violated. *Wolicki-Gables*, 634 F.3d at 1301 (citation omitted).

Relying on these preemptive principles, federal courts have dismissed product liability and tort lawsuits involving Class III PMA-approved devices on preemption grounds in a variety of contexts and over an endless array of state law claims. *See, e.g.*, *Mink*, 860 F.3d at 1330 (warnings claim premised on an alleged failure to submit adverse event reports was preempted because this "theory of liability is not one that state tort law has traditionally occupied"); *Brooks v. Mentor Worldwide, LLC*, 985 F.3d 1272 (10th Cir. 2021) (affirming dismissal of product liability claims involving pain pump as preempted); *Williams v. St. Jude Med.*, 2017 U.S. Dist. LEXIS 227477 at *27-32 (N.D. Ga. Oct. 19, 2017) (negligent failure to warn and negligent misrepresentation claims were preempted by FDA regulations); *Frey v. Bayer Corp.*, 499 F. Supp. 3d 1283, 1294 (M.D. Ga. 2023) (defective label claims predicated on alleged misrepresentations tracking FDA-approved language preempted).

This includes cases involving medical devices like the HeartMate 3 LVAS at issue here. *See Bryant v. Thoratec Corp.*, 343 F. Supp. 3d 594, 604–10 (S.D. Miss. 2018) (HeartMate 2 claims preempted); *Winkler v. Medtronic, Inc.*, 2019 U.S. Dist. LEXIS 198391, at *3 (D. Md. Nov. 15, 2019) (LVAS claims, including negligent manufacture and strict liability, preempted); *see also Horn*

*v. Thoratec Corp.*, 376 F.3d 163, 176 (3d Cir. 2004) ("Horn's general state law claims would impose substantive requirements on TCI that would conflict with, or add to, the requirements imposed by the FDA involved in the design, manufacturing, fabrication and labeling of the HeartMate.").

### 2.  The Strict Liability And Negligent Manufacturing Defect Claims Are Preempted

Plaintiff's strict liability and negligent manufacturing defect claims allege that the HeartMate 3 was "adulterated" in violation of a hodgepodge of CGMP regulations.  (Compl. ¶¶ 47-49, 60, 66.)  This haphazard approach does not fit through the narrow gap.

To start, CGMP regulations lack the necessary specificity to avoid preemption.  "[B]y their nature, the CGMPs merely prescribe overarching guidelines for manufacturers to follow when developing their own procedures, rather than specifically enforceable duties." *Kubicki v. Medtronic, Inc.*, 293 F. Supp. 3d 129, 180 (D.D.C. 2018); *see also Webb v. Mentor Worldwide LLC*, 2020 U.S. Dist. LEXIS 60860, at *4 (N.D.N.Y. Apr. 7, 2020).  In the FDA's own words:

> Because this regulation must apply to so many different types of devices, *the regulation does not prescribe in detail how a manufacturer must produce a specific device.* Rather, the regulation provides the framework that all manufacturers must follow by requiring that manufacturers develop and follow procedures and fill in the details that are appropriate to a given device according to the current state-of-the-art manufacturing for that specific device.

*See* RJN, Ex. 6 (emphasis added).

Although *Mink* disagreed with this analysis in passing (860 F.3d at 1331 n.3), in *Thomas v. Alcon Labs,* Judge Evans agreed that CGMPs "cannot serve as a basis for a parallel claim" because they are "intentionally vague and open ended [in] nature" and "are to be tailored by each manufacturer of a device to apply to their particular safety and efficacy needs." 116 F. Supp. 3d 1361, 1368 (N.D. Ga. 2013) (quotations and citations omitted) (Evans, J.). "Since these regulations are open to a particular manufacturer's interpretation, allowing them to serve as a basis for a claim would lead to differing safety requirements that might emanate from various lawsuits." *Id.* "This would necessarily result in the imposition of standards that are different from, or in addition to those imposed by the MDA—precisely the result that the MDA preemption provision seeks to prevent." *Id.*[2]

---

[2] Judge Evans was not alone. *See, e.g., Garcia v. Bayer Essure, Inc.*, 2023 U.S. Dist. LEXIS 112416, at *9 (N.M.D.C. Jun. 28, 2023) ("CGMPs in general tend to be subject to interpretation, as they apply to all medical devices, and have therefore been found by various courts to be too unspecific to defeat preemption."); *Webb v. Mentor Worldwide LLC*, 453 F. Supp. 3d 550, 558 (N.D.N.Y. 2020) ("Courts in the Second Circuit and elsewhere have determined that the CGMPs are intended to serve only as an umbrella quality system providing general objectives medical device manufacturers must seek to achieve." (quotations and citation omitted)); *Burkett v. Smith & Nephew GmbH*, 2014 U.S. Dist LEXIS 43995, at *15 (E.D.N.Y. Mar. 31, 2014) ("Because Burkett's manufacturing defect claim is based on violation of generally applicable CGMPs, as opposed to federal requirements specific to the R3 liner, preemption bars the claim."); *Horn v. Boston Sci. Neuromodulation Corp.*, 2011 U.S. Dist. LEXIS 102164, at *25 (S.D. Ga. Aug. 26, 2011) (granting summary

Moreover, even if CGMPs could support a parallel claim in theory, they do not in this case because the litany of allegedly-violated federal regulations in the Complaint here are not supported by facts. *See, e.g.*, *In re Medtronic, Inc.*, 592 F. Supp. 2d at 1158 ("Merely alleging that Medtronic failed to comply with the CGMPs/QSR . . . is insufficient without some factual detail about *why* that violates federal standards.").

For example, Plaintiff points to 21 C.F.R. Part 820 (promulg. 6/1/1997), which contains general provisions regarding packaging and storage of medical devices. (Compl. ¶¶ 47, 55, 60, 66.) Plaintiff never alleges how packaging or storage was amiss or otherwise caused a manufacturing defect in the subject device. Plaintiff also alleges that Abbott failed to adhere to 21 C.F.R. § 803.50 (promulg. 8/14/2015), which sets out reporting requirements to the FDA pertaining to adverse events. (*Id.* at ¶¶ 51, 55.) But Plaintiff never alleges that Abbott failed to report adverse events to the FDA—or even alleges a claim for failure to warn at all. The list goes on. To illustrate these points, Abbott

---

judgment because QSR regulations "fail to provide any tangible or concrete standard, . . . [and] to allow a violation of such a flexible standard to result in liability would, in itself, be imposing a standard 'different from, or in addition to' those imposed by the MDA"); *Ilarazza v. Medtronic, Inc.*, 677 F. Supp. 2d 582, 588 (E.D.N.Y. 2009) ("where, as here, a plaintiff relies on nothing more that CGMP's in support of a parallel cause of action, preemption bars the claim").

appends **Exhibit 1** listing the regulations cited in the Complaint, although they lack supporting facts and are otherwise preempted.

Plaintiff's use of the phrase "adulterated" also does not signify a parallel claim. This term has a particular meaning in the FDA scheme and it does not support preemption. Whether a defendant's products are "'adulterated' under … the FDCA" is a "matter[] rest[ing] within the enforcement authority of the FDA, not this Court." *Perez v. Nidek Co.,* 711 F.3d 1109, 1120 (9th Cir. 2013) (quoting district court). "[A] conclusion that a particular ... product is 'adulterated,' in the abstract, means little other than that FDA could choose to initiate enforcement proceedings." *Comty. Nutrition Inst. v. Young*, 818 F.2d 943, 950 (D.C. Cir. 1987). "[O]nly the government has a right to take action with respect to adulterated products" and "to the extent [plaintiff's] adulteration claim is derivative of her other claims …, she cannot overcome a finding of preemption merely by claiming that the product was adulterated." *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 544 (3d Cir. 1994) (citations omitted); *see also Riegel*, 552 U.S. at 329 ("adulteration and misbranding claims are pre-empted when they have the effect of establishing a substantive requirement for a specific device") (citation & quotation marks omitted).

Thus, "adulteration" allegations that complain about "noncompliance with the technical, administrative details of the FDA's complex regulatory scheme" are impliedly preempted because they "would not give rise to such tort

liability if the FDCA or the regulatory regime created pursuant to it had never existed." *Barnes v. Howmedica Osteonics Corp.*, 2010 U.S. Dist. LEXIS 160134, at *15 (N.D. Ala. Dec. 14, 2010); *see also Martin v. Medtronic, Inc.*, 2017 U.S. Dist. LEXIS 26350, at *7 (E.D. Cal. Feb. 24, 2017) (finding "'adulteration'-based claims are incongruous with the common law and thus impliedly preempted because they entirely rest on defendants' purported violations of the FDA's CGMPs"). "Any derivative claim that the [device] was adulterated as a result of" an FDCA violation "is a disguised claim to privately enforce the federal law, prohibited under 21 U.S.C. § 337(a)." *Sadler v. Advanced Bionics, Inc.*, 929 F. Supp. 2d 670, 685 n.20 (W.D. Ky. 2013).

Georgia federal courts agree. *See Jackson v. Medtronic, Inc.*, 2023 U.S. Dist. LEXIS 235964, at *5-6 (Jan. 23, 2023 N.D. Ga.) ("Plaintiffs' claim regarding the manufacture or sale of a dangerous and/or adulterated device (Count IV) attempts to directly enforce the [FDCA] and therefore is barred by the Act."); *Leonard*, 2011 U.S. Dist. LEXIS 93176, at *23-24 (dismissing negligence per se claim based on regulations governing adulteration).[3]

In addition, Plaintiff's claims are preempted because they intrude on the FDA's authority to regulate and oversee Class III medical devices like the HeartMate 3. *See also* RJN Exs. 1-2. The import of the FDA's evaluation of

---

[3] *But see Barnes ex rel. Gibson*, 2021 U.S. Dist. LEXIS 159341 (N.D. Ga. Aug. 24, 2021) (manufacturing defect claim premised on CGMP and "adulterated" regulations not preempted).

compliance with the QSR and CGMP regulations **is that these are an inherent part of the PMA process**. Premarket approval means the FDA has concluded the manufacturer **has adequately complied** with the QSR and CGMP requirements. A plaintiff may not use state tort law to read the QSR or CGMPs to require things beyond what the FDA required through the PMA process because that constitutes an attempt to impose state law requirements that are "different from, **or** in addition to" and prohibited by 21 U.S.C. § 360k(a).

A final point bears mention. In opposing preemption, Plaintiff may be tempted to cite to this Court's decision in *Blevins-Ellington v. Coopersurgical, Inc.*, 2023 U.S. Dist. LEXIS 28936, at *42 (N.D. Ga. Jan. 17, 2023) (May, J.). There, the Court ruled that the plaintiffs' claims were not expressly preempted because they "rest[ed] on common law duties owed to individuals." *Id.* But the same result does not follow here. First, the Court in *Blevins-Elkington* did not address whether the plaintiffs' claims were impliedly preempted because that argument was waived. *See id.* at *49. By contrast, here, Plaintiff's claims rest on allegations that Mr. Deese's HeartMate 3 was "adulterated" or that they violated federal regulations—and thus are impliedly preempted because these are requirements existing *only* under federal law that *only* the FDA has authority to enforce. Second, *Mink* and its progeny require a more robust express preemption analysis regarding whether Plaintiff's claims impose

duties "different than or in addition to" those required under federal law. *See, e.g.*, *Watters v. Coopersurgical, Inc.*, 655 F. Supp. 3d 376, 387 (E.D.N.C. 2023). Reciting a laundry list of federal regulations untethered to the facts of the case does not suffice.

### B. Plaintiff Does Not And Cannot Allege Facts Supporting Attorney Fees Under OCGA Section 13-6-11 (Count III)

Under Georgia law, "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." O.C.G.A. § 13-6-11. An award under this statute must "relate to the conduct arising from the transaction underlying the cause of action being litigated." *Brown v. Kent*, 274 Ga. 849, 850 (2002). And "statutory recovery for stubborn litigiousness or causing necessary trouble and expense is authorized if there exists no bona fide controversy or dispute regarding liability for the underlying cause of action." *Id.*; *see also M&H Construction Co. v. North Fulton, Development Corp.*, 238 Ga. App. 713, 714 (1999).

"Bad faith" under this statute "requires more than bad judgment or negligence." *Powell Co. v. McGarey Grp., LLC*, 508 F. Supp. 2d 1202, 1220 (N.D. Ga. 2007) (citation omitted). "'Rather, it imports a 'dishonest purpose' or

'some moral obliquity' and implies 'conscious doing of wrong' and a 'breach of known duty through some motive of interest of ill will.'" *Id.* (citation omitted). A plaintiff "must show that defendants refused to fulfill their professional duties 'out of some interested or sinister motive, or that [they] consciously acted for some dishonest or improper purpose.'" *Id.* (citation omitted). "Where plaintiff fails to establish bad faith, plaintiff cannot establish that defendants have caused unnecessary trouble and expense if a bona fide controversy exists between the parties." *Id.*

"[C]ourts have dismissed claims brought under this statute where the plaintiff failed to plead specific facts to support the claim and merely recited the statutory language." *Clean2GoServs., LLC v. IRT Living, LLC*, 2025 U.S. Dist. LEXIS 58772, at *13-14 (N.D. Ga. Mar. 28, 2025) (citing *Mora v. Miller*, 2019 U.S. Dist. LEXIS 245230 (N.D. Ga. Apr. 10, 2019) and *Kinard v. Gallina*, 2017 U.S. Dist. LEXIS 75848 (S.D. Ga. May 18, 2017)); *Lorgus v. Tureau*, 2024 U.S. Dist. LEXIS 159108, at *6-7 (M.D. Ga. Sept. 4, 2024) (dismissing OCGA § 13-6-11 claim because plaintiff "merely cited the statute" without facts in support).

Similarly here, Plaintiff's claim under OCGA § 13-6-11 falls far short of this standard. Plaintiff's liability theories are negligence and strict liability. But negligence is hardly the same as "bad faith" and thus provides no basis for awarding litigation expenses under the statute. *Guggenheim Dev. Servs. LLC*

*v. JMC Flatrock Partners LLC,* 2025 U.S. Dist. LEXIS 72091, at *8 (M.D. Ga. Apr. 16, 2025) (OCGA § 13-6-11 "requires more than 'bad judgment or negligence.'" (citation omitted)).  It follows that OCGA § 13-6-11 is even less applicable to a strict liability claim—which "imposes liability irrespective of negligence" and thus does not consider intent or motive at all.  *Ford Motor Co. v. Carter*, 239 Ga. 657, 660 (1977); *see also Alexander v. Gen. Motors Corp.*, 267 Ga. 339, 340 (1996) ("[A] strict liability claim in Georgia … eliminates questions of negligence and the usual defenses to negligence.").

There are no allegations of a dishonest purpose, moral obliquity, conscious doing of wrong, a breach of known duty through some motive of interest of ill will, or other conduct.  *Powell*, 508 F. Supp. 2d at 1220.  Count III merely recites the statutory language from OCGA § 13-6-11 without any factual support.

Because Plaintiff has not alleged any facts regarding bad faith, the only way Count III survives is if there is no bona fide controversy.  But this motion to dismiss alone demonstrates that Abbott disputes liability to Plaintiff as a matter of law—and that holds true even if the Court permits the action to get past the pleading stage (which it should not).

And of course, any claim under Section 13-6-11 is moot if there is no underlying Count that survives dismissal.  Because Abbott contends that all of Plaintiff's claims fail, so too must the claim for litigation expenses.  *See, e.g.,*

*Benchmark Builders, Inc. v. Schultz*, 289 Ga. 329, 330 (2011) (a fee award is warranted only to a "prevailing party.").

## IV.    CONCLUSION

The Court should dismiss the Complaint with prejudice.

Dated: May 30, 2025

Respectfully submitted,

*/s/ Reginald L. Snyder*
Reginald L. Snyder
Georgia Bar No. 557060
TAYLOR ENGLISH DUMA LLP 1600
Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Office: (770) 434-6868
Mobile: (404) 877-8966
Facsimile: (404) 393-3872
rsnyder@taylorenglish.com

| | |
|---|---|
| David de Jesus<br>California Bar No. 197914<br>REED SMITH LLP<br>101 2nd Street, Suite 1800<br>San Francisco, California 94105<br>Office: (415) 543-8700<br>Mobile: (510) 501-1136<br>ddejesus@reedsmith.com<br>*Pro Hac Vice forthcoming | Lisa Baird<br>Florida Bar No. 961191<br>REED SMITH LLP<br>200 South Biscayne Blvd., Suite 2600<br>Financial Center<br>Miami, Florida 33131<br>Office: (786) 747-0299<br>Mobile: (786) 316-1334<br>lbaird@reedsmith.com<br>*Pro Hac Vice forthcoming |

Attorneys for Defendants Thoratec, LLC and Abbott Laboratories Inc.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1(B)

Abbott hereby certifies that this brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).

**EXHIBIT 1**
**COMPLAINT'S ALLEGED FEDERAL VIOLATIONS**

| Topic | Alleged Fed. Violation | Regulatory Requirement | Response |
|---|---|---|---|
| **QSR/ CGMPs** | 21 CFR Part 820<br><br>Compl. ¶¶ 47(c), 60(a)-(e), 66(a)-(e) | ***Quality System Regulation General Scope***<br>These requirements govern the methods, facilities, and controls for the design, manufacture, packaging, labeling, storage, installation, and servicing of all finished devices intended for human use, and are intended to ensure devices will be safe and effective. | *See* MTD Section III. A. 2:<br><br>For Class III PMA approved devices, the FDA enforces, as part of the PMA process, compliance with the QSR and CGMPs, which "merely prescribe overarching guidelines for manufacturers to follow when developing their own procedures, rather than specifically enforceable duties." *Kubicki v. Medtronic, Inc.*, 293 F. Supp. 3d 129, 180 (D.D.C. 2018). CGMPs "cannot serve as a basis for a parallel claim" because they are "intentionally vague and open ended [in] nature" and "are to be tailored by each manufacturer of a device to apply to their particular safety and efficacy needs." *Thomas v. Alcon Labs*, 116 F. Supp. 3d 1361, 1368 (N.D. Ga. 2013).<br><br>Moreover, because FDA enforces compliance with the QSR and CGMPs as part of the PMA process: "[M]anufacturers are required to include" descriptions of compliance with "CGMPs, promulgated in the QSR…[and] approval of a PMA application for a device can be denied if a manufacturer does not conform to the QS regulation requirements." RJN Ex. 2 (*FDA Compliance Program Guidance Manual, Medical Device PMA Preapproval and PMA Postmarket Inspections* (Mar. 5, 2012)) at Part I, p. 1-2; *see also* RJN Ex. 1 (*Quality System Information for Certain Premarket Application Reviews; Guidance for Industry and FDA Staff* (Feb. 3, 2003)).<br><br>Plaintiff thus cannot use state law to enforce the QSR or CGMPs in a manner different from the FDA's device-specific PMA, as that would be a "different from, or in addition to" state law requirement pursuant to 21 U.S.C. § 360(k)(a) and *Riegel.* These |
| | 21 CFR § 820.30<br><br>Compl. ¶¶ 47(f)-(h), 60(f), 66(f) | ***Design Controls***<br>Manufacturers shall establish and maintain procedures to control the design of the device to ensure that specified design requirements are met. | |
| | 21 CFR § 820.50<br><br>Compl. ¶¶ 47(d)-(e), 60(f), 66(f) | ***Purchasing Controls***<br>Manufacturers shall establish and maintain procedures to ensure that all purchased or otherwise received conform to specified requirements. | |
| | 21 CFR § 820.70<br><br>Compl. ¶¶ 47(i), 48(e), 60(f), 66(f) | ***Production and Process Controls***<br>Manufacturers shall establish and maintain procedures for the use and removal of a manufacturing material that could reasonably be expected to have an adverse effect on product quality, to ensure that it is removed or limited to an amount that does not adversely affect the device's quality. | |
| | 21 CFR § 820.72<br><br>Compl. ¶¶ 47(j), 60(f), 66(f) | ***Inspection, Measuring, and Test Equipment***<br>Each manufacturer shall ensure that all inspection, measuring, and test equipment, including mechanical, automated, or electronic inspection and test equipment, is suitable for its intended purposes and is capable of producing valid results. | |
| | 21 CFR § 820.75<br>Compl. ¶¶ 47(k)-(l), 60(f), 66(f) | ***Process Validation***<br>Each manufacturer shall establish and maintain procedures for monitoring and control of process parameters for validated processes to ensure that the specified requirements continue to be met.<br><br>Where the results of a process cannot be fully verified by subsequent inspection and test, the process shall be validated with a high degree of assurance and approved by established procedures. | |
| | 21 CFR § 820.90 | ***Nonconforming Product***<br>Manufacturers shall establish and maintain | |

| Topic | Alleged Fed. Violation | Regulatory Requirement | Response |
|---|---|---|---|
| | Compl. ¶¶ 47(m), 60(f), 66(f) | procedures to control product that does not conform to specified requirements. | regulations also are not genuinely equivalent to any state law duty, such as that imposed through a manufacturing defect claim. |
| | 21 CFR § 820.100<br><br>Compl. ¶¶ 49, 60(f), 66(f) | ***Corrective and Preventive Action***<br>Each manufacturer shall establish and maintain procedures for implementing corrective and preventive action, such as analyzing processes and operations, investigating causes of nonconforming product, identifying action needed to correct and prevent, etc. | Plaintiff's attempt to directly enforce these federal regulations or supplant the FDA's role and discretion in interpreting these regulations is impliedly preempted per *Buckman* and 21 U.S.C. § 337(a).<br><br>Plaintiff also has not alleged (much less in a non-conclusory way) how these regulations allegedly were violated and/or causally connected to the alleged injury at issue. |
| | 21 CFR § 820.130<br><br>Compl. ¶¶ 47(n), 60(f), 66(f) | ***Device Packaging***<br>Each manufacturer shall ensure that device packaging and shipping containers are designed and constructed to protect the device from alteration or damage during the customary conditions of processing, storage, handling, and distribution. | |
| | 21 CFR § 820.140<br><br>Compl. ¶¶ 47(o), 60(f), 66(f) | ***Handling***<br>Each manufacturer shall establish and maintain procedures to ensure that mixups, damage, deterioration, contamination, or other adverse effects to product do not occur during handling. | |
| | 21 CFR § 820.150<br><br>Compl. ¶¶ 47(p), 60(f), 66(f) | ***Storage***<br>Each manufacturer shall establish and maintain procedures for the control of storage areas and stock rooms for product to prevent mixups, damage, deterioration, contamination, or other adverse effects pending use or distribution and to ensure that no obsolete, rejected, or deteriorated product is used or distributed. | |
| | 21 CFR § 820.170<br>Compl. ¶ 47(e) | ***Installation***<br>Each manufacturer of a device requiring installation shall establish and maintain adequate installation and inspection instructions, and where appropriate test procedures. | |
| | 21 CFR § 820.198<br><br>Compl. ¶¶ 50, 60(f), 66(f) | ***Complaint Files***<br>Each manufacturer shall establish and maintain procedures for receiving, reviewing, and evaluating complaints by a formally designated unit. | |

| Adverse Event Reporting | 21 CFR § 803.50<br><br>Compl. ¶ 51 | ***MDRs for Serious Adverse Events Involving Death or Serious Injury***<br><br>Manufacturers must report required information no later than 30 days after becoming aware that a device may have caused/contributed to a death or serious injury or malfunctioned and the device or similar device would likely cause or contribute to a death or similar injury if it were to recur. Manufacturer is responsible to conduct investigation of each event. | *See* MTD Section III. A. 2:<br><br>The litany of federal regulations Plaintiffs cite, including this one, fail to specify how Abbott allegedly failed to comply.<br><br>Moreover, this MDR regulation is unrelated to manufacturing, and thus cannot support a parallel claim. |
|---|---|---|---|
| **Federal Food, Drug, and Cosmetic Act** | 21 USC § 331<br><br>Compl. ¶¶ 60(a)-(e), 66(a)-(e) | ***Prohibited Acts***<br><br>Lists acts prohibited by the FDCA, including delivery of any device that is adulterated or misbranded into interstate commerce. | *See* MTD Section III. A. 2:<br><br>Any action to enforce the FDCA "shall be by and in the name of the United States" [21 U.S.C. § 337(a)], thus mandating that the FDCA and its implementing regulations be "enforced exclusively by the Federal Government." *Buckman Co. v. Plaintiff's Legal Committee*, 531 U.S. 341, 352 (2001). |
| | 21 USC § 351<br><br>Compl. ¶¶ 60(a)-(e), 66(a)-(e) | ***Adulterated Drugs and Devices***<br><br>FDCA definition of what constitutes an adulterated product. | "[O]nly the government has a right to take action with respect to adulterated products" and "to the extent [plaintiff's] adulteration claim is derivative of her other claims …, she cannot overcome a finding of preemption merely by claiming that the product was adulterated." *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 544 (3d Cir. 1994) (citations omitted).<br><br>As such, "adulteration" allegations that complain about "noncompliance with the technical, administrative details of the FDA's complex regulatory scheme" are impliedly preempted because they "would not give rise to such tort liability if the FDCA or the regulatory regime created pursuant to it had never existed." *Barnes v. Howmedica Osteonics Corp.*, 2010 U.S. Dist. LEXIS 160134, at *15 (N.D. Ala. Dec. 14, 2010). |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 30, 2025, I electronically filed Defendants Thoratec, LLC and Abbott Laboratories Inc.'s Rule 12(b)(6) Motion to Dismiss with the Court using the CM/ECF system and served all parties by e-mail, facsimile, and/or U.S. Mail.

*/s/ Reginald L. Snyder*
Attorney of Defendants